DIJONAE TRAMMELL; TY'JAI
TRAMMELL; JAQUAN TRAMMELL;

  *Plaintiffs*,

        vs.

AMERICAN CYANAMID CO.;
E.I. DUPONT DENEMOURS &
COMPANY; NL INDUSTRIES, INC., THE
ATLANTIC RICHFIELD COMPANY; and
THE SHERWIN-WILLIAMS COMPANY;

  *Defendants*.

**SECOND AMENDED COMPLAINT**

Case No.

---

Now come the above-named Plaintiffs, by their attorneys, for a cause of action against the above- named defendants, and allege and show to the Court as follows:

## I.    PARTIES

1. Each of the Plaintiffs join in this action pursuant to Rule 20 (a)(1) of the Federal Rules of Civil Procedure asserting their rights to relief arising out of the same series of transactions and occurrences and said rights to relief giving rise to numerous common questions of law and fact as alleged below, and invoke the jurisdiction of the Court pursuant to 28 U.S.C. § 1332.

2. Dijonae Trammell is a minor and was a resident of the State of Wisconsin at all times material to the allegations in this Complaint, and currently resides and is domiciled at 149 Green Street Toccoa, GA. Plaintiff is a citizen of the State of Georgia. Plaintiff previously occupied the residence(s) in Milwaukee, Wisconsin (2909 North 35th Street), which contained surfaces which were coated with paint containing white lead carbonate pigment

1

that was manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants. At the time that Plaintiff resided at said premises, the Plaintiff was exposed to and did ingest said white lead carbonate and the Plaintiff continued to be poisoned by the ongoing ingestion of said white lead carbonate pigments. Said lead poisoning caused a peak elevated blood lead level of 15 on 8/21/1997.

3. Ty'Jai Trammell is a minor and was a resident of the State of Wisconsin at all times material to the allegations in this Complaint, and currently resides and is domiciled at 149 Green Street Toccoa, GA. Plaintiff is a citizen of the State of Georgia. Plaintiff previously occupied the residence(s) in Milwaukee, Wisconsin (2909 North 35th Street), which contained surfaces which were coated with paint containing white lead carbonate pigment that was manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants. At the time that Plaintiff resided at said premises, the Plaintiff was exposed to and did ingest said white lead carbonate and the Plaintiff continued to be poisoned by the ongoing ingestion of said white lead carbonate pigments. Said lead poisoning caused a peak elevated blood lead level of 11 on 8/20/1997.

4. Jaquan Trammell was a minor and was a resident of the State of Wisconsin at all times material to the allegations in this Complaint, and currently resides and is domiciled at 149 Green Street Toccoa, GA. Plaintiff is a citizen of the State of Georgia. Plaintiff previously occupied the residence(s) in Milwaukee, Wisconsin (2909 North 35th Street) , which contained surfaces which were coated with paint containing white lead carbonate pigment that was manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants. At the time that Plaintiff resided at said premises, the Plaintiff was exposed to and did ingest said white lead carbonate and the Plaintiff continued to be

poisoned by the ongoing ingestion of said white lead carbonate pigments. Said lead poisoning caused a peak elevated blood lead level of 32 on 8/21/1997.

5. American Cyanamid Company ("American Cyanamid") is being sued in its own capacity and is a Maine corporation with its principal place of business in New Jersey.

6. E.I. DuPont DeNemours & Company ("DuPont") is a Delaware corporation with its principal place of business in Delaware.

7. NL Industries, Inc. ("NL Industries") formerly known as the National Lead Company, is a New Jersey corporation with its principal place of business in Texas.

8. The Atlantic Richfield Company ("ARCO"), the successor-in-interest to International Smelting and Refining Company, Anaconda Lead Products Company, Anaconda Sales Company, Anaconda Copper Mining Company, and International Lead Refining Company, is a Delaware corporation with its principal place of business in Illinois.

9. The Sherwin-Williams Company ("Sherwin-Williams") is an Ohio corporation with its principal place of business in Ohio.

10. At all pertinent times, American Cyanamid, DuPont, NL Industries, ARCO and Sherwin-Williams (hereafter referred to collectively as "Industry Defendants") together with their agents, servants, employees, alter egos, and predecessor corporations, manufactured, processed, marketed, promoted, supplied, distributed and/or sold white lead carbonate pigments for use in residential paints and coatings in the State of Wisconsin, including the municipality of Milwaukee, as well as the surrounding communities.

## II.  THE FACTS

11. The white lead carbonate pigment manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants was and is a defective and unreasonably dangerous product.

12. Specifically, the white lead carbonate manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants is unreasonably dangerous because the hidden risks of exposing children to white lead carbonate causes the childhood disease of lead poisoning, as well as additional severe and permanent injuries, including, but not limited to learning disabilities, decrements in intelligence, and deficits in a wide range of neuropsychological functioning, including visual motor skills, fine motor skills, verbal skills, attention and concentration, memory, comprehension and impulse control. Exposure of children to white lead carbonate can also cause coma, seizure and death.

13. All of the white lead carbonate residential paint pigments manufactured, processed, marketed, promoted, supplied, distributed and/or sold by the Industry Defendants were functionally interchangeable, physically indistinguishable, identically defective and unreasonably dangerous.

14. Each Plaintiff is unable to identify the specific manufacturer, supplier and/or distributor of the white lead carbonate pigments present in the residence in which he or she was exposed and in which he or she ingested said pigments. Each Plaintiff's inability to identify the manufacturer, supplier and/or distributor of the white lead carbonate pigment was not and is not the fault of said Plaintiff.

15. The white lead carbonate pigments manufactured, promoted, and sold by the Industry

Defendants were in a condition not contemplated by the ultimate consumer and were dangerous to an extent beyond that which was contemplated by the ordinary consumer.

16. Each Plaintiff ingested lead derived from all paint layers containing white lead carbonate pigments in each residence at which Plaintiff was exposed and said lead was ingested, *inter alia*, through direct ingestion of paint chips containing white lead carbonate pigments in multiple layers, direct gnawing, chewing and sucking on intact accessible surfaces such as window sills and wood work covered with multiple layers of paint containing white lead carbonate pigments, and chronic and cumulative ingestion of dust containing lead derived from multiple layers of paint containing white lead carbonate pigments. In each exposure residence all the layers of paint containing white lead carbonate pigments combined to create a unified and indivisible risk of harm.

17. Although the use of all leaded pigments was banned in the United States in 1978, white lead carbonate pigments are still present in and on many homes, schools, hospitals and other public and private buildings throughout the State of Wisconsin, including the premises at which each Plaintiff was exposed to and ingested lead derived from white lead carbonate pigments.

18. Each Industry Defendant knew and/or should have known since at least the early 1900's that white lead carbonate pigments are hazardous to human health, and in particular to children. For example, in an 1881 booklet entitled "Paints and Painting," Sherwin-Williams wrote:

> "***While it is true that carbonate of lead possesses some of the best elements of paint, it is also true that in other respects it is defective***."

In another example, in its employee newsletter for the month of January 1900, Sherwin-Williams published the following statement:

> *"It is also familiarly known that white lead is a deadly cumulative poison, while zinc is innocuous. It is true, therefore, that any paint is poisonous in proportion to the percentage of lead contained in it."*

In an additional example, in its employee newsletter for the month of May, 1915, Sherwin-Williams published the following statement:

> *"White lead . . . has some fatal defects, chief of which is the tendency to 'chalk' off after exposure for a year or two*."

19. Each Industry Defendant also knew and/or should have known that, at all relevant times, there existed safer alternatives to the use of white lead carbonate as a pigment for residential paints and coatings.

20. In 1971, after decades of medical research had unambiguously implicated white lead carbonate pigments as the major contributing force in childhood lead poisoning, and at a time when the majority of paint and pigment manufacturers had ceased production of white lead carbonate, American Cyanamid entered the white lead carbonate pigment market.

21. Beginning on June 1, 1971, American Cyanamid began to manufacture white lead carbonate pigments specifically intending that said pigments be used by Armstrong Chemcon, Inc., in its Scotch Laddie line of exterior residential paints which consisted of 85% pure white lead carbonate and which was sold and distributed in the State of Wisconsin and the City of Milwaukee, as well as the cities of Racine, Green Bay, Eau Claire, LaCrosse, Gillett, and surrounding communities. The Scotch Laddie line of residential paints containing high concentrations of pure white lead carbonate pigments continued to be sold and advertised in Wisconsin through 1973.

22. Despite their knowledge that white lead carbonate pigment was unreasonably dangerous and hazardous to human health, each of the Industry Defendants continued to manufacture,

6

process, market, promote, supply, distribute and/or sell white lead carbonate pigments, failed to warn of the hazardous nature of white lead carbonate pigment, and failed to adequately test white lead carbonate pigments.

23. Each of the Industry Defendants also contributed to the creation of a risk of harm to children when it failed to disclose the hazardous nature of white lead carbonate pigments and instead marketed and represented its paint products containing white lead carbonate pigments as safe.

24. Specifically, the Industry Defendants engaged in promotional campaigns that failed to disclose the dangers of using white lead carbonate pigments in residential paints and coatings and of exposing children to paint and coatings products containing white lead carbonate. Further, the Industry Defendants marketed paints and coatings containing white lead carbonate pigments as products that fostered health and well-being and that could be used safely on interior and exterior surfaces where the presence of children was likely.

25. Despite the knowledge of each of the Industry Defendants regarding the hazards of white lead carbonate when used as a pigment in residential paint, each failed to disclose the dangers of using white lead carbonate pigments in residential paints and coatings and of exposing children to paint and coatings products containing white lead carbonate pigments.

26. Instead, for decades the Industry Defendants marketed white lead carbonate as a safe product that fostered health and well-being and promoted white lead as a pigment for use in areas inhabited by children.

27. Each of the Industry Defendants also contributed to the creation of the risk of harm to the Plaintiff through participation in trade associations such as the Lead Industries Association ("LIA") and the National Paint, Varnish, & Lacquer Association (NPVLA), and said activity

7

included, *inter alia*, marketing white lead carbonate as a pigment in paint through misleading advertisements and promotions that failed to disclose the dangers of using white lead carbonate pigments in residential paints and coatings and of exposing children to paint and coatings products containing white lead carbonate pigments.

28. Furthermore, the Industry Defendants contemplated that the paint products they manufactured, including those containing white lead carbonate pigments might cause personal injuries for which they may be liable. For example, on January 28, 1936, the National Paint, Varnish and Lacquer Association, Inc. (NPVLA), advised various Industry Defendants, including Sherwin-Williams and E.I. DuPont, that:

> *"during the past few years many claims for bodily injury, illness or death have been brought against members of the paint industry from causes claimed to have arisen through the use of the products of the industry and advised that a type of insurance has been developed to protect members of the industry against this [h]azard."*

The NPVLA further advised that:

> *" the Scientific Section of the Association had been urging the adoption of caution lables for the past twenty years, the that the Association had received little cooperation from members of the industry in this particular filed."*

29. The LIA is not a party because it is presently under the protection of the bankruptcy laws in the United States. From at least 1928 through the events material to allegations of this complaint, the LIA was the agent, servant, employee, alter ego, aider and abettor of one or more of the Industry Defendants and acted individually and/or within the scope of its agency, servitude and employment in promoting and marketing white lead carbonate products used as a pigment in paints and coatings for residential use in the State of Wisconsin during the

8

relevant time period.

30. Through the LIA and NPVLA, each of the Industry Defendants also sought to suppress all unfavorable information and publicity about white lead carbonate pigments without regard for the truth of such information and despite its own contrary knowledge about the severe hazards posed by white lead carbonate when used as a pigment in paint.

31. As a result of the intentional, negligent and other wrongful conduct of the Industry Defendants in manufacturing, processing, marketing, promoting, supplying, distributing and/or selling white lead carbonate residential paint pigments, said defective and unreasonably dangerous product was present in and on each of the residences at which each Plaintiff ingested lead derived from white lead carbonate pigments as alleged in the preceding paragraphs of this Complaint.

32. At all relevant times, the conduct of the Industry Defendants was malicious and in reckless and/or intentional disregard for the rights of the Plaintiff.

33. As a direct and proximate result of these and other wrongful actions by the Industry Defendants, each of the Plaintiffs has suffered the injury of lead poisoning, as well as, severe and permanent sequelae, including, but not limited to, great pain of body and mind and significant neuro-psychological deficits, past and future hospital and medical expenses, and impairment of each Plaintiff's ability to learn, live and enjoy life, all in an unspecified amount pursuant to Wisconsin Statutes.

## FIRST CAUSE OF ACTION
### Strict Liability of the Industry Defendants

34. The Plaintiffs re-allege and incorporate herein by reference the foregoing paragraphs of this Complaint.

35. The Industry Defendants have at all times material to this action been engaged in the business of manufacturing, promoting, selling, distributing, and/or supplying of white lead carbonate pigments which were used in the painting, staining, construction of, and the maintenance and remodeling of the residences at which each of the Plaintiff ingested white lead carbonate pigments.

36. The white lead carbonate pigments that each of the Plaintiffs were exposed to were in substantially the same condition as the pigments were in before leaving the control of each of the Industry Defendants.

37. At the time that the white lead carbonate pigments left the possession and control of the Industry Defendants, the pigments were a defective and unreasonably dangerous product because the Industry Defendants failed to provide an adequate warning, and when used in the manner in which the pigments were intended by the Industry Defendants and/or for the purpose that it was reasonably foreseeable that the pigments may have been used, the pigments caused substantial and severe injuries to each of the Plaintiffs.

38. The defective condition of the white lead carbonate manufactured, marketed, promoted, supplied, distributed and/or sold by Industry Defendants was a factor that substantially contributed to each of the Plaintiff's injuries.

## SECOND CAUSE OF ACTION
**Negligence of the Industry Defendants**

39. The Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs of this Complaint.

40. The Industry Defendants knew and/or should have known that white lead carbonate when used as a pigment in residential paints and coatings was harmful to children coming into contact with it.

41. Despite the knowledge that white lead carbonate pigments posed an unreasonable risk to the health and welfare of children exposed thereto, the Industry Defendants continued to manufacture, promote, sell, distribute, and/or supply white lead carbonate pigments which were used in and on each of the residences at which each Plaintiff ingested lead derived from white lead carbonate pigments as alleged in the preceding paragraphs of this Complaint.

42. At all times material hereto, the Industry Defendants were under an obligation of due care to refrain from any act which would cause foreseeable harm to others.

43. At all times material, the Industry Defendants were under a continuing duty to warn about the hazards and unreasonable dangers of their white lead carbonate pigment products.

44. The Industry Defendants also owed a heightened duty of care because their conduct directly impacted the health and welfare of children.

45. The Industry Defendants breached their duties by engaging in conduct that posed an unreasonable risk of harm, including, among other things:

    a.  selling white lead carbonate pigments without an adequate warning to the general public, including but not limited to, consumers, ultimate users, retailers,

wholesalers, third party paint manufacturers, and other intermediaries, of the dangerous characteristics thereof;

 b. continuing to fail to adequately warn the general public of the dangerous characteristics of white lead carbonate pigments following the sale of its product through the present time;

 c. failing to adequately test white lead carbonate for use in residential paints and coatings; and/or

 d. continuing to manufacture, promote, sell, distribute, and/or supply white lead carbonate pigments for use in residential paints and coatings when they knew, or in the exercise of ordinary care, should have known that white lead carbonate was harmful to children and other persons coming into contact with it.

46. The negligence of the Industry Defendants was a factor that substantially contributed to the lead poisoning and other injuries caused to each of the Plaintiffs by the ingestion of white lead carbonate.

WHEREFORE each of the Plaintiffs demands judgment against each Industry Defendant, jointly and severally, as follows:

1. For each of the Plaintiffs in an unspecified amount pursuant to Wisconsin Statutes, including but not limited to compensatory;

2. For pre-judgment and post-judgment interest, together with the costs, disbursements of

this action;

3. For any other remedy the court deems just and equitable under the circumstances.

**EACH PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

Dated at Milwaukee, Wisconsin, this 25th day of May, 2011.

        LAW OFFICES OF PETER EARLE, LLC


        s/ Peter G. Earle
        Peter G. Earle (WI State Bar No. 1012176)
        Attorney for Plaintiff
        839 North Jefferson Street, Suite 300
        Milwaukee, WI 53202
        (414)276-1076


        s/ Jonathan D. Orent
        MOTLEY RICE LLC
        Jonathan D. Orent (WI State Bar No. 1062035)
        Attorneys for Plaintiff
        321 South Main Street
        Providence, RI 02940-6067
        (401) 457-7700