# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**GLENN BURTON, JR,**
        Plaintiff,
v.                                                 Case No. 07-CV-0303

**AMERICAN CYANAMID CO, et al.,**
        Defendants;

---

**RAVON OWENS,**
        Plaintiff,
v.                                                 Case No. 07-CV-0441

**AMERICAN CYANAMID CO, et al.,**
        Defendants;

---

**CESAR SIFUENTES,**
        Plaintiff,
v.                                                 Case No. 10-CV-0075

**AMERICAN CYANAMID CO, et al.,**
        Defendants.

---

**MANIYA ALLEN, et al.,**
        Plaintiffs,
v.                                                 Case No. 11-CV-0055

**AMERICAN CYANAMID CO, et al.,**
        Defendants;

---

**ERNEST GIBSON,**
        Plaintiff,
v.                                                Case No. 07-CV-0864

**AMERICAN CYANAMID CO, et al.,**
        Defendants;

---

**DIJONAE TRAMMELL,**
       Plaintiff,
v.                                                Case No. 14-CV-1423

**AMERICAN CYANAMID CO, et al.,**
        Defendants

---

| | |
|---|---|
| **DEZIREE VALOE** and **DETAREION VALOE**<br>        **Plaintiffs,**<br>   v.<br>**AMERICAN CYANAMID CO, et al.,** | Case No. 11-CV-0425 |

## DECISION AND ORDER

    The Sherwin-Williams Company is one of several defendants in lawsuits brought by approximately 170 plaintiffs under Wisconsin's risk contribution theory of tort liability. The plaintiffs allege that they suffered personal injuries as a result of ingesting white lead carbonate pigment that was present in the paint used on their childhood homes. The lawsuits were assigned to me. In May 2019, three of them went to trial, and the jury found Sherwin Williams and two other defendants liable to the plaintiffs. After judgment was entered, the defendants appealed, and those appeals are pending in the United States Court of Appeals for the Seventh Circuit. Another group of four cases are in the final stages of preparation for a consolidated trial, though the trial date is uncertain because of the COVID-19 pandemic. In each case, Sherwin-Williams has filed a motion arguing that I must disqualify myself under 28 U.S.C. § 455(a).[1]

---

[1] Sherwin-Williams filed its motion using a caption that includes the three cases that are on appeal. It is not clear why Sherwin-Williams seeks to disqualify me from those cases at this time. Proceedings in the district court have ended, and while there is a possibility of a remand for further proceedings, such a remand may never occur. Although a party may seek relief from a judgment or order under Federal Rule of Civil Procedure 60(b)(6) on the ground that the district judge should have recused, *see Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–64 (1988), Sherwin-Williams does not explicitly move to vacate the judgments entered in the cases that are on appeal. Moreover, while the appeals are pending, I would lack jurisdiction to grant relief under Rule 60(b). *See, e.g., Boyko v. Anderson*, 185 F.3d 672, 674 (7th Cir. 1999). In any event, because I am denying Sherwin-Williams' motion as it applies to the cases that remain pending before me, I will also deny the motion as it applies to the cases on appeal. To the extent the motion should be construed as a motion to vacate the judgments entered in those cases,

2

Sherwin-Williams has also filed a motion for leave to file a supplemental memorandum of authority in support of its motion to disqualify. I will grant that motion and consider the supplemental memorandum in addressing the motion to disqualify.

## I. BACKGROUND

The Wisconsin Supreme Court adopted the risk contribution theory to open a path to recovery for plaintiffs injured by a fungible product who cannot identify the manufacturer of the specific product that caused them harm. The theory was developed in a case involving the drug DES, which was prescribed to pregnant mothers in the mid-twentieth century to prevent miscarriages but was found to cause vaginal cancer in daughters born to those mothers. *Collins v. Eli Lilly Co.*, 116 Wis.2d 166 (1984). The Wisconsin Supreme Court extended the risk contribution theory to white lead carbonate cases in *Thomas ex rel. Gramling v. Mallett*, 285 Wis.2d 236 (2005). Other than the *Thomas* case itself, the three cases tried in May 2019 were the first white lead carbonate risk contribution cases to go to trial.

Sherwin-Williams' motion to disqualify centers on a law review article I authored, in which I contend that economic and political developments in recent decades have eroded America's democratic institutions and that the decisions of the Roberts Court have contributed to this phenomenon. *See* Lynn Adelman*, The Roberts Court's Assault on Democracy*, 14 Harv. L. & Pol'y Rev. 131 (2019). In one part of the article, I critiqued recent Supreme Court decisions in the area of corporate political speech, which I argue have wrongly construed campaign finance regulations "not as reasonable efforts to

---

I note that I may deny the motion even though an appeal is pending. *See* Fed. R. Civ. P. 62.1(a)(2).

equalize the political influence of different classes of Americans, but as efforts to censor the voices of the wealthy." *Id.* at 149.

I also critiqued the Supreme Court's decision in *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), which involved a Vermont statute that prohibited pharmacies from selling prescription data to pharmaceutical researchers without affirmative consent from prescribing physicians. I expressed disagreement with the Court's classification of data-selling as "speech" that was not subject to regulation by a democratically elected legislature. Adelman, *supra*, at 150-151. I also noted that in previous eras the Court had "connected the protection of commercial speech to the formation of intelligent opinion and to the value of democracy," but that that connection was not present in *Sorrell. Id.* at 151.

The article also discussed challenges facing the American working class and the poor. It analyzed Supreme Court decisions in which, I argued, the Court had given insufficient weight to these challenges and had in consequence stymied legislative efforts to address them. I argued that the Court's decisions in this area weakened democracy by "consistently augment[ing] the power of corporations and the wealthy and reduc[ing] that of ordinary Americans." *Id.* at 148.

Finally, the article included comments on President Trump and the Republican Party. I wrote that Congressional Republicans "depend on a relatively small number of wealthy donors to stay in power," and that therefore their policy agenda is determined by the interests of those wealthy donors. *Id.* at 136. I also wrote that President Trump "is disinclined to buck the wealthy individuals and corporations who control his party." *Id.* at 137.

4

After I published this article, members of the public filed three Judicial Conduct Complaints under the Judicial Conduct and Disability Act, asserting that the publication of the article amounted to judicial misconduct because it exhibited disrespect for the judicial system and political bias. The Judicial Council of the Seventh Circuit reviewed and resolved the complaints. No. 07-CV-0303, ECF No. 1812-2. It determined that my criticisms of Supreme Court decisions (which constitute the majority of the article) are "well within the boundaries of appropriate discourse" and noted that they are largely drawn from the dissenting opinions of Justices in those decisions. *Id.* at 9-10. It found, however, that the "attacks on Republican party positions could be interpreted . . . as calling into question [my] impartiality in matters implicating partisan or ideological concerns." *Id.* at 10. It issued a public admonition, and I made a public statement specifically apologizing for using language that might be construed as expressing bias against the Republican Party and affirming my commitment to the impartial administration of justice in all cases. *Id.* at 12.

Sherwin-Williams now argues that, based largely on the statements I made in the article, reasonable observers could question my ability to decide the present cases impartially. Therefore, it contends, I must disqualify myself under 28 U.S.C. § 455(a).

## II. DISCUSSION

Section 455(a) provides that "any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In evaluating whether my impartiality might reasonably be questioned, I conduct the inquiry "from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances.*" *In re Sherwin-Williams Co.*, 607 F.3d 474, 477

(7th Cir. 2010) (quoting *Cheney v. U.S. Dist. Court,* 541 U.S. 913, 924 (2004) (Scalia, J., in chambers)). "That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant." *Id.* Moreover, "a reasonable person is a 'thoughtful observer rather than . . . a hypersensitive or unduly suspicious person." *Id*. at 478 (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)). "Finally, a reasonable person is able to appreciate the significance of the facts in light of relevant legal standards and judicial practice and can discern whether any appearance of impropriety is merely an illusion." *Id.*

Sherwin-Williams contends that the statements I made in the article concerning large corporations and economic inequality could cause reasonable observers to question my impartiality to preside over these cases. Sherwin-Williams believes that this is so because my statements "condemn[ed] all corporations indiscriminately and call[ed] on courts to find 'resourceful' ways to help 'ordinary Americans' redress 'inequality.'" No. 07-CV-303 ECF No. 1780 at 2 of 21. However, this belief is based largely on a mischaracterization of the article's substance. A reasonable observer who reads the article could not say that I "condemn[ed] all corporations indiscriminately." My comments about corporations pertained to what I perceived to be the Supreme Court's tendency to "consistently augment the power of corporations and the wealthy and reduce that of ordinary Americans." Adelman, *supra*, at 148. I posited that such a tendency undermined democracy because it contributed to the concentration of power in the hands of the rich. *Id.* Stating that, in a healthy democracy, large corporations and wealthy individuals should not possess a disproportionate share of political power cannot reasonably be described as "condemning all corporations indiscriminately."

6

Sherwin-Williams notes that I did not stop there. In my concluding remarks, I stated that corporations "refuse to support policies that promote the common good" and that they instead use their resources to combat such policies and "promote policies that benefit only themselves." *Id.* at 157. I observed that they had "achieved considerable success in this selfish endeavor." *Id.* These comments paint corporations in a negative light, but a reasonable observer could not think that they amount to a condemnation of all corporations. My remarks merely recognize that the primary duty of a large corporation in a capitalist economy is to further the economic interests of its shareholders. Moreover, to the extent the views I expressed were negative, they were not so extreme as to create a reasonable appearance of bias against all corporations. Here, I note that, to be impartial, a judge does not have to approve of a litigant's activities or motives, and that a judge is permitted to have "a less than high opinion" of a party. *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980). For a judge's personal opinion of a party to be grounds for disqualification, it must involve "an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes." *Id.* "It is an animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct, unless the attitude is somehow related also to a suspect or invidious motive such as racial bias or a dangerous link such as a financial interest . . . ." *Id. See also Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002) ("The bias or prejudice 'must be grounded in some personal animus or malice that the judge harbors . . . of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes.'").

7

Sherwin-Williams contends that, by describing corporations that seek to wield political power as being engaged in a "selfish endeavor," I used "derogatory language" that is "on par" with language used by trial judges who have been disqualified based on their statements. First, Sherwin-Williams cites *Hathcock v. Navistar International Transportation Corporation*, 53 F.3d 36 (4th Cir. 1995). In that case, a district judge made statements at a torts seminar that were highly critical of defendants in products liability cases. He called such defendants "sons of bitches" and praised cases that he believed would frighten lawyers who represented them. *Id.* at 39. At the time he made these statements, the judge was presiding over a jury trial involving a products liability defendant. The Fourth Circuit held that the judge's statements, when viewed alongside his other conduct, which included *ex parte* communications with plaintiff's counsel, created an appearance of bias against product liability defendants that required his recusal from the trial. *Id.* at 41. Second, Sherwin-Williams cites *Nicodemus v. Chrysler Corporation*, 596 F.2d 152 (6th Cir. 1979). In that case, the judge accused the defendant, Chrysler, of intimidating witnesses and being unworthy of belief. *Id.* at 155. In the course of doing so, he stated that the company was "a bunch of villains and they are interested only in feathering their own nests at the expense of everybody they can, including their own employees." *Id.* The judge later suggested that he could not guarantee his impartiality in future proceedings in the matter. *Id.* at 157. The Sixth Circuit determined that these statements required the judge to disqualify himself under § 455(a). *Id.*

My describing corporations as being engaged in a "selfish endeavor" when they use their wealth to influence legislation is a far cry from the "sons of bitches" and "bunch of villains" comments made by the judges in *Hathcock* and *Nicodemus*. Moreover, the

8

Case 2:14-cv-01423-LA   Filed 03/22/21   Page 8 of 15   Document 739

disqualification decisions in those cases were not based exclusively on the judges' unfavorable comments about the litigants. In *Nicodemus*, the judge suggested that he might not be able to be impartial in future proceedings, and in *Hathcock*, the judge engaged in improper *ex parte* communications. Thus, neither case supports the notion that my article reflects such a deep hostility towards corporations that my ability to decide these cases impartially could reasonably be questioned.

Sherwin-Williams next contends that the concluding sentence of the article—in which I state that "[i]t will definitely take every bit of democratic resourcefulness that we can muster to undo the damage that the Court has already caused," Adelman, *supra*, at 158—could be perceived as a call for judges to adopt a bias against corporations and in favor of the poor. However, a reasonable person who has actually read the article would not think that I was advocating for judges to become biased or disregard the law or judicial ethics in any way. The article urges "democratic resourcefulness," and the democratic process is ordinarily understood to exclude judicial action. *See, e.g., Am. Fed'n of Labor v. Am. Sash & Door Co.*, 335 U.S. 538, (1949) (Frankfurter, J., concurring) (describing the federal courts as "the non-democratic organ of our Government"). Sherwin-Williams contends that this statement could be construed as calling for action by the judicial branch because, in an interview with the legal news service Law360, I stated that "[a]ll of the branches need to do everything they can to strengthen [democracy]." J. Overley, "Judge Defends 'Reasonable' Rebuke of Roberts Court," Law360 (March 11, 2020). But stating that all branches should do what they can to strengthen democracy does not imply that judges should issue biased decisions. No reasonable observer could conclude that that is what I meant.

9

Sherwin-Williams next contends that a reasonable observer could question my ability to be impartial because my article criticizes specific Supreme Court decisions in the area of corporate commercial speech. In the present litigation, Sherwin-Williams advances legal positions based on a corporation's First Amendment rights, and it contends that my statements in the article could be reasonably perceived as being hostile towards such rights. But it is well settled that a judge is permitted to criticize legal doctrines without having to disqualify himself from cases in which the doctrines might apply. *See Southern Pac. Commc'ns Co. v. American Tel. and Tel. Co.*, 740 F.2d 980, 990 (D.C. Cir. 1984) ("It is well established that the mere fact that a judge holds views on law or policy relevant to the decision of a case does not disqualify him from hearing the case."); *Ass'n of Nat'l Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151, 1171 n.52 (D.C. Cir. 1979) ("[J]udges are free to decide cases involving policy questions on which they previously have expressed a view."); *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976) ("The mere fact that a judge has previously expressed himself on a particular point of law is not sufficient to show personal bias or prejudice."); *see also Laird v. Tatum*, 408 U.S. 1 (1972) (Rehnquist, J., in chambers) (Supreme Court Justice not disqualified from hearing case involving a matter about which, as an attorney, he expressed a view); *Phillip v. ANR Freight Sys., Inc.*, 945 F.2d 1054, 1056 (8th Cir. 1991) ("recusal is not required where 'the judge has definite views as to the law of a particular case.'"); *Leaman v. Ohio Dep't of Mental Retardation & Dev.*, 825 F.2d 946, 949 n.1 (6th Cir. 1987) (judge's prior expression of an opinion on a point of law is not disqualifying). Indeed, the Seventh Circuit's Judicial Council recognized this very point in its resolution of the judicial complaints against me. The Council explained: "Judges criticize one another's reasoning, sometimes harshly. In

fact, much of Judge Adelman's article draws from dissenting opinions in the decisions he criticizes. Nothing said in this decision on the complaints should be interpreted as suggesting that judges should be silenced from criticizing court decisions." No. 07-CV-0303, ECF No. 1812-2 at 8 of 12. Later, the council stated that my "substantive criticism of Supreme Court decisions" was "well within the boundaries of appropriate discourse." *Id.* at 9 of 12.

Sherwin-Williams cites several cases in which judges were disqualified based on their public statements about cases that either were, or were about to be, pending before them. *See Ligon v. City of New York*, 736 F.3d 118, 126–27 (2d Cir. 2013); *United States v. Microsoft Corp.*, 253 F.3d 34, 112 (D.C. Cir. 2001); *In re Boston's Children First*, 244 F.3d 164, 171 (1st Cir. 2001); *United States v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993). However, these cases do not support my disqualification because nothing I wrote in the article applies directly to the present cases. I did not, for example, offer an opinion as to how a court should apply the Supreme Court's corporate-speech decisions to a case in which a corporation uses the First Amendment as a defense to products liability. *See In re Sherwin-Williams Co.*, 607 F.3d at 478–79 (distinguishing *Microsoft*, *Boston's Children First,* and *Cooley* on grounds that, in those cases, the judge's comments involved a pending case).[2]

---

[2] In one of Sherwin-Williams' cases, *Ligon*, the district judge "intimat[ed] her views on the merits of a case that had yet to be filed" and sought "to have that case filed and to preside over it after it was filed." 736 F.3d at 124. Sherwin-Williams seems to imply that I engaged in similar conduct in the present case because, in its view, the plaintiffs "maneuver[ed]" lead paint cases that had been pending in state court to this court. *See* No. 07-cv-303 ECF No. 1809 at 3–4 of 12. However, I never engaged in any conduct that could reasonably be viewed as intimating a view on the merits of the present cases, and I did not encourage the plaintiffs to dismiss their state-court cases and refile them here.

11

Sherwin-Williams next contends that my rulings on various procedural and substantive issues in these cases have contributed to an appearance of partiality. However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). And there is nothing peculiar about my rulings in these cases that would cause a reasonable observer to question my impartiality, either when they are viewed in isolation or in conjunction with the comments I made in the article. Sherwin-Williams spends much of its disqualification briefs rearguing the merits of various issues that I decided over the course of these cases, but these are matters to be pursued in an appeal rather than a disqualification motion. *See Grove Fresh Distribs.*, 299 F.3d at 641 ("judicial rulings are grounds for appeal, not recusal").

Finally, in its supplemental brief, Sherwin-Williams contends that, for two reasons,[3] the Judicial Council's resolution of the complaints against me supports disqualification. First, Sherwin-Williams notes that the Judicial Council was concerned that "[t]he opening two sentences [of my article] could reasonably be understood by the public as an attack on the integrity of the Chief Justice rather than disagreement with his votes and opinions in controversial cases." No. 07-cv-303 No. 1812-2 at 10 of 12. In those sentences, I wrote:

> By now, it is a truism that Chief Justice John Roberts' statement to the Senate Judiciary Committee that a Supreme Court justice's role is the passive one of a neutral baseball "umpire who [merely] calls the balls and strikes" was a masterpiece of disingenuousness. Roberts' misleading testimony inevitably comes to mind when one considers the course of decision-making by the Court over which he presides.

---

Sherwin-Williams' insinuation that I participated in the plaintiffs' choice of forum is unfounded.

[3] Sherwin-Williams actually presents three reasons in its brief, but the third relates to my criticism of the Supreme Court's commercial-speech decisions, which I have already discussed. Here, I will only reiterate that the Judicial Council did not deem any part of my criticism of those decisions improper.

Adelman, *supra*, at 131 (footnote omitted). These sentences do not suggest that I would be biased against a paint manufacturer in a products liability case. However, Sherwin-Williams contends that I "connected that inappropriate language to this litigation" when, during a status conference, I referred to the balls-and-strikes metaphor. During the portion of the status conference to which Sherwin-Williams refers, the parties were discussing video deposition testimony that they intended to present at trial. An issue arose as to the order in which I should rule on the objections made during the depositions so that the parties could edit the videos in time to use them at trial. During the ensuing discussion, plaintiffs' counsel stated, "we need you to call the balls and strikes and tell us what can be played and what cannot." No. 07-CV-303 ECF No. 1408 at 28. At that point, I interjected: "I don't do that. John Roberts does that. I don't call balls and strikes." *Id.* Plaintiffs' counsel then resumed her comments, and eventually the parties and the court agreed on a procedure for resolving the objections that were made during the depositions. Clearly, my comment about the balls-and-strikes metaphor was not meant to suggest that I would not be impartial when ruling on the objections. Rather, it was a quip based on my feelings about the metaphor. No reasonable observer who was aware of both the quip and my article could think that, by making the quip, I was expressing an intent to be partial in these matters.

Second, Sherwin-Williams refers to the Judicial Council's finding that "the attacks on Republican party positions could be interpreted . . . as calling into question Judge Adelman's impartiality in matters implicating partisan or ideological concerns." No. 07-CV-303 ECF No. 1812-2 at 10 of 12. Sherwin-Williams contends that the present cases fit within the Judicial Council's concern for "ideological" matters. However, products

liability cases in which plaintiffs seek compensation for serious personal injuries are not usually considered "ideological," and I doubt that such cases are what the Judicial Council had in mind when it used the term. Indeed, in the paragraph at issue, the Council expressed concerned about the sentences in my article that involved the Republican Party, and thus its use of the term "ideological" should be understood to refer to matters involving highly partisan issues. And while, on some level, nearly every lawsuit involves issues that members of opposing political parties view differently, here the connection between political issues and the subject matter of this litigation is not so strong as to call into question my ability to be impartial.

Sherwin-Williams also points out that its counsel in this litigation, the law firm Jones Day, "has been connected to President Trump's administration in the media, is well-known to have represented Republican Presidents and President Trump's campaign, and continues to represent the Republican National Committee." No. 07-CV-303 ECF No. 1812-1 at 5 of 8. It thus posits that my criticism of Republicans could give rise to an appearance of bias against its counsel, which in turn could manifest itself as bias against Sherwin-Williams. But this chain of reasoning is too tenuous to give rise to a reasonable appearance of bias. Even if it were true that my comments reflect bias towards Republicans in partisan or ideological cases, nothing in the article reasonably implies that I would be biased against a party because it hired a lawyer who represents or has represented Republicans.

In sum, I conclude that my comments in the article, when viewed either in isolation or in conjunction with my rulings in this case, my statements to the media, and the other

conduct cited by Sherwin-Williams in its briefs,[4] do not reasonably call my ability to impartially decide these matters into question. *See In re United States*, 572 F.3d 301, 312 (7th Cir. 2009) (noting that when deciding a disqualification motion, a judge's actions must be "assessed in their totality"). Therefore, Sherwin-Williams' motion to disqualify will be denied.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Sherwin-Williams' motion to disqualify (No. 07-CV-0303, ECF No. 1779; No. 07-CV-864, ECF No. 403; No. 11-CV-0055, ECF No. 453; No. 11-CV-0425, ECF No. 246; No. 14-CV-1423, ECF No. 319) is **DENIED.**

**IT IS FURTHER ORDERED** that Sherwin-Williams' motion for leave to file a supplemental memorandum of authority (No. 07-CV-0303, ECF No. 1812; No. 07-CV-864, ECF no. 412; No. 11-CV-0055, ECF no. 927; No. 11-CV-0425, ECF No. 255; No. 14-CV-1423, ECF No. 679) is **GRANTED.**

Dated at Milwaukee, Wisconsin this 22nd day of March, 2021.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
U.S. District Judge

---

[4] Such other conduct includes a 2007 law review article I coauthored that mentioned the Wisconsin Supreme Court's decision in *Thomas*. *See* L. Adelman & S. Fite, "Exercising Judicial Power: A Response to the Wisconsin Supreme Court's Critics," 91 Marq. L. Rev. 425 (Winter 2007). This article was the subject of a prior motion to disqualify me, which the Seventh Circuit addressed in *Sherwin-Williams Co.*, 607 F.3d at 476–79.